IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TESS MCGLENN, MARGARET MCGLENN,
LAUREN ENGLE, KYLIE KAVANAUGH,
LILLIAN XISTRIS, ADELINE XISTRIS,
SYDNEY MARZ, ANNIE PARENTEAU,
GABRIELLE HAUPT, and ALAYNA TUCKER,

                    Plaintiffs,

     v.

MADISON METROPOLITAN SCHOOL DISTRICT,       OPINION and ORDER
DAVID KRUCHTEN, HEIDI TEPP, JOE FANNING,
and JOE BALLAS d/b/a/ JP Public Safety Consulting,       21-cv-683-jdp
LLC,

                    Defendants,

     and

AUTO-OWNERS INSURANCE COMPANY
and COMMUNITY INSURANCE CORPORATION,

                    Intervenor-Defendants.

---

Plaintiffs are a group of former students at East High School in Madison, Wisconsin. They are suing David Kruchten (a former East High teacher) for secretly videorecording them—sometimes naked—in hotel rooms during overnight field trips. They also contend that the Madison Metropolitan School District and three of its employees facilitated Kruchten's conduct.

The school district and its employees have filed a document that they call "motion in limine defining garden variety emotional distress damages." Dkt. 97. For simplicity, the court will refer to these defendants collectively as the school district. In its motion, the school district says that five of the plaintiffs—Lauren Engle, Margaret McGlenn, Tess McGlenn, Gabrielle

Haupt, and Alayna Tucker—do not wish to produce medical records relating to their mental health, and they do not wish to submit to a mental health examination.[1] The other plaintiffs are not at issue in the school district's motion, so the court will refer to the five as simply "plaintiffs."

The school district does not object to plaintiffs' proposed limitation on discovery, so long as plaintiffs' evidence on emotional distress damages is limited to "garden variety emotional distress." Plaintiffs agree with this limitation in principle, but the parties seek guidance from the court on what "garden variety emotional distress" means and the type of evidence that will be admissible to support or oppose it. The school district proposes a five-paragraph order on the issue, and plaintiffs propose a jury instruction.

The court will not adopt either the proposed order or the proposed jury instruction, neither of which identify specific evidence that will be admissible or inadmissible. But the court will provide guidance on "garden variety emotional distress" to assist the parties in discovery and preparing for trial.

## ANALYSIS

Federal law recognizes a limited privilege in a patient's mental health treatment. *See Jaffee v. Redmond*, 518 U.S. 1, 10 (1996). But that privilege can be waived: "If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state" and subject the plaintiff to a mental

---

[1] At the time the school district filed its motion, Tess McGlenn and Gabrielle Haupt were being represented by their parents, but the court has since granted plaintiffs' motion to substitute the children, who are now adults. *See* Dkt. 119.

health examination. *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006). *Oberweis* did not identify any exceptions to waiver when a plaintiff seeks damages for emotional distress. But the court did say that district courts may consider whether "the plaintiff's interest in privacy outweighs the probative value of the information contained in the records." *Id*.

Many district courts have recognized an exception to the waiver rule, including this one. *See Estate of DiPiazza v. City of Madison*, No. 16-cv-60-wmc, 2017 WL 1828920, at *2–3 (W.D. Wis. Sept. 5, 2017); *Johnston v. Jess*, No. 18-cv-882-bbc, 2020 WL 3605629, at *4 (W.D. Wis. July 2, 2020).[2] The exception recognized in these cases is that a party does not waive her mental health privilege if the evidence she presents on emotional harm is limited to "garden variety emotional distress." Invoking the exception has potential benefits for both sides: the plaintiff preserves the privacy of her medical records, and the defendant avoids liability for more extreme claims of emotional distress. And both sides save the expense of more extensive discovery. The parties here seem to agree that a plaintiff may preserve the privilege in her medical records if she agrees to a proper "garden variety" limit. The court will follow the parties' lead and assume that an exception to the waiver rule would be consistent with *Oberweis*.

The parties have two core disputes: (1) the scope of emotional distress that is "garden variety"; and (2) what evidence a plaintiff may adduce to prove it. The parties aren't yet fighting over any specific evidence. But the court is persuaded that resolving these issues will help establish the scope of discovery and guide the admissibility of evidence. And it will allow the parties to adjust their litigation strategy accordingly.

---

[2] A minority of district courts have declined to recognize any exception to the waiver rule. *See DiPiazza*, 2017 WL 1828920, at *2–3 (summarizing different approaches that courts have taken).

3

## A.  Definition of "garden variety emotional distress"

Both sides submit proposed definitions of "garden variety emotional distress" that they glean from various district court decisions in both this circuit and around the country. The school district proposes that "[a] plaintiff's choice of garden variety emotional damages is a self-imposed limitation that permits a plaintiff to testify only that she felt humiliated, embarrassed, angry or upset because of the alleged misconduct," *Id.* at 8. It submitted a five-paragraph proposed order that elaborated on the concept. Dkt. 97, at 7–8. Plaintiffs propose a definition as part of a proposed jury instruction: "the negative emotions that the Plaintiff experienced that inherently flow from the Defendants' conduct, and the negative emotions that you believe the Plaintiff experienced that any healthy, well-adjusted person treated in the manner the Defendants treated the Plaintiffs would suffer." Dkt. 99, at 22.[3] Both sides claim to derive their definitions from *Flowers v. Owens,* 274 F.R.D. 218, 225–26 (N.D. Ill. 2011), which surveyed the numerous definitions that other courts have adopted before settling on one that substantially follows *Santelli v. Electro-Motive*, 188 F.R.D. 306, 307 (N.D. Ill. 1999).

There's a core of common ground in this case. Both sides agree that garden variety emotional distress is the distress that a healthy person would experience in response to the wrongful acts of the defendant, and that it does not include extreme forms distress that would require mental health treatment. And both sides agree that a plaintiff's testimony about garden variety emotional distress cannot be supported or rebutted by evidence of mental health treatment.

---

[3] Plaintiffs' proposed instruction also attempts to distinguish evidence the jury may consider for plaintiffs who waived their privilege from evidence the jury may consider for plaintiffs who didn't waive their privilege. That issue is premature. The court will determine how to instruct the jury in the context of preparing for trial.

But the school district asks for further limits. The school district proposes that garden variety emotional distress includes only the negative emotions experienced by the plaintiff, such as "humiliation, embarrassment, anger, and feeling depressed, anxious and dejected as a result" of encounters with defendant. Dkt. 97, at 8.  But it does not include the "symptoms or conditions" that plaintiff may have experienced. *Id*. In other words, the plaintiffs may testify about their own feelings, but not about any of the outward manifestations of their feelings, such as sleeplessness, nervousness, or depression. And, under the school district's proposal, plaintiffs may not adduce any evidence from third parties about the manifestations of their feelings.

There is some support for the school district's approach in *Santelli* and *Flowers*. But the procedural postures and the facts of those two cases is different than we have here. The court concludes that a complete bar on testimony about any outward manifestation of a plaintiff's emotional distress goes further than necessary to protect a defendant's legitimate interests.

It is important to keep in mind the reason that a plaintiff ordinarily waives her privilege by seeking damages for emotional distress, which is that evidence of past diagnosis or treatment for a mental health condition could show that the plaintiff's distress was caused by something or someone other than the defendant. *Id.* at 225. So the important issue in drawing a line between what does or doesn't qualify as "garden variety" is the likelihood that the emotional distress the plaintiff is complaining about could be caused by something other than the defendant's conduct. That is consistent with *Oberweis*, in which the court of appeals stated that district courts may balance a plaintiff's privacy interests with the probative value of mental health information. 456 F.3d at 718. If there is a reasonable chance that the plaintiff's distress could have other causes, then it would be unfair to allow the plaintiff to seek damages for that

distress without allowing the defendant to obtain discovery that could undermine the claim. The plaintiff can't have it both ways. *See Flowers*, 274 F.R.D. at 225 ("[O]ne cannot use a privilege as both a sword and a shield.").

But if the plaintiff experiences no more distress than what a typical healthy person in her situation would experience, then it is unlikely that her distress is caused by some undisclosed mental health condition. And it is thus unlikely that the evidence of counseling or therapy would yield important evidence tending to rebut the claim of emotional distress.

The concern raised in *Flowers* is that testimony about "symptoms and conditions" might allow a plaintiff to get evidence of a serious mental health condition in through the back door. But the example provided by *Flowers* is an extreme one. The plaintiff in *Flowers* claimed that police misconduct left him with permanent anxiety about leaving home and being seen in public. The court looked to the Diagnostic and Statistical Manual of Mental Disorders (American Psychiatric Association, 4th ed. 2000) (DSM–IV) to show that plaintiff's testimony suggested that he was suffering from agoraphobia, which would be an injury that he could not claim without allowing defendants access to his mental health treatment records. The court acknowledged that the plaintiff did not claim that he actually suffered from agoraphobia. But the court concluded that

> the similarities between some of Mr. Flowers' claimed emotional reactions and the diagnostic criteria for these disorders are striking and tend to further support the conclusion—which exists independently in any event—that much of Mr. Flowers' claimed emotional suffering cannot fairly be called "garden variety."

*Flowers*, 274 F.R.D. at 228. Because the court concluded that the plaintiff's extreme long-term anxiety was well beyond an ordinary reaction to the defendant's conduct, it barred plaintiff from testifying about it.

The specific ruling in *Flowers* makes perfect sense, but it would be wrong to draw from the analysis in *Flowers* the rule that any testimony about the outward manifestations of emotional distress would necessarily waive a plaintiff's psychotherapy privilege. The reason is that even garden variety emotional distress may have outward manifestations that are not necessarily symptoms of a serious mental health condition. For example, a healthy plaintiff might well experience some period of depressed mood and sleeplessness after a traumatic experience, but those manifestations would not suggest a serious underlying mental health condition, even though depressed mood and sleeplessness are among the symptoms of a major depressive episode in DSM-V. The court finds recourse to the DSM-V unhelpful, because some of the symptoms that are diagnostic criteria for major depressive episode are themselves the type of subjective emotions that the school district accepts as admissible evidence of garden variety emotional distress.

A blanket bar is also unwarranted because evidence of outward manifestations of a plaintiff's mental state may yield relevant evidence for *both* sides. A plaintiff's claim of profound humiliation, for example, might well be impeached by testimony that her social engagement continued unabated after the injury. The court concludes that evidence of outward manifestations of a plaintiff's emotional distress are admissible, so long as those manifestations are not so extreme as to suggest a mental health condition that would warrant treatment. So, for example, the court would not allow a plaintiff to testify that she experienced hallucinations, attempted self-harm, or was unable to leave the house without extreme anxiety.

With those considerations in mind, the court will adopt the following definition for garden variety emotional distress:

> Garden variety emotional distress is emotional distress within the range of what a healthy, well-adjusted person would feel as the

> result of the defendant's conduct. Garden variety emotional distress may not by supported or negated by expert testimony or by evidence of plaintiff's counseling or therapy. But it may be supported or negated by testimony about plaintiff's emotional state and conduct.

This definition may require some line-drawing, but that will have to come in the context of concrete disputes about specific evidence.

The court will not include the notion, suggested by the parties, that garden variety emotional distress is a "likely," "inherent," or "intrinsic" response to defendant's conduct. Those terms are so vague that they would create more disputes than they would resolve. More important, the terms suggest an objective standard for determining damages for emotional distress, suggesting that plaintiffs should be awarded the same amount in light of defendants' conduct. Healthy individuals may experience an adverse event differently, and the measure of damages for emotional distress must be based on the plaintiff's actual subjective experiences. This is why the court's definition uses *the range* of distress that a healthy, well-adjusted person would experience. So long as a plaintiff's distress falls within that range, that plaintiff will not waive her privilege.

## B.  Third-party testimony

The remaining dispute between the parties is whether a plaintiff waives her privilege if she intends to support her claim for emotional distress damages with testimony from a third party, such as a parent.

If, as the court has determined, plaintiffs' privilege is tied to whether their emotional distress is consistent with what a healthy, well-adjusted person would experience, there is no reason to limit evidence to testimony from the plaintiff herself. Others who observed the plaintiff's behavior may have testimony relevant to the extent of plaintiffs' sadness, anxiety, or

other negative emotions. Particularly in a case like this one in which all the plaintiffs were minors during the events that gave rise to this case, a parent or guardian may be in a better position than even the plaintiff herself to describe the effect that defendants' conduct had on her.

As with any lay witness, a parent's testimony would have to be rationally based on the parent's personal observations. Fed. R. Evid. 701. And any behavior testified about would have to stay within the parameters identified by the court.

## C. Conclusion

The plaintiffs here may claim they have suffered garden variety emotional distress, as defined by the court in this order, without waiving their privilege over the mental health records. But by asserting their privilege, these plaintiffs are giving up any claim to more severe forms of emotional distress. Other plaintiffs may assert claims for even severe emotional distress caused by defendants, but those plaintiffs may not assert their privilege over their mental health records.

ORDER

IT IS ORDERED that defendants' "motion in limine" seeking guidance on the scope of evidence that plaintiffs may offer without waiving their mental health privilege, Dkt. 97, is

GRANTED. Plaintiffs do not waive their privilege if the assert claims for garden variety emotional distress as defined in this order.

Entered January 31, 2024.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge